# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Case No. 08-13031-MFW |
| AE LIQUIDATION, INC., *et al.*,[1] | Chapter 7 |
| Debtors. | (Jointly Administered) |
| JORGE MATA, AGUSTIN BUJAIDAR SOLIS, GULFSTREAM NAUTICAL LLC, OAKRIDGE AVIATION OF MONTANA, LLC, MIKE ROMAN, IAN LLOYD, JEAN-GEORGES SCHWARTZ, COASTJET AIRCRAFT PTY LTD., AEOLUS AVIATION HOLDINGS, LLC, A.R. AIRWAYS, DIAMOND ISLAND JET SERVICES LLC, NORTHWEST TRUSTEE SERVICES, INC., JET-ALLIANCE PARTNERS, LP, H&H COLOR LAB, INC., BRADLEY D. HOWARD, SKY JET, LLC, TRITON ONE LLC, EDWARD ARTHUR GOODMAN, 3CV AVIATION LLC, INTERMODAL AVIATION INC., SONDHI CONSULTING SERVICES LLC, PRIVATE AIR, LLC, JOHN D. HARKEY JR., LANTECH LEASING LLC, and SHAUN HUGHES, INHERITED ASSETS, | Adv. No. 08-51891-MFW |
| Plaintiffs, | |
| v. | |
| ECLIPSE AEROSPACE, INC., KINGS ROAD INVESTMENTS LTD., AND JOHN DOE, 1 THROUGH 1,000,[2] | |
| Defendants. | |

---

[1] The debtors in these jointly administered cases are Eclipse Aviation Corp. and Eclipse IRB Support, LLC.

[2] For reasons detailed herein, the Plaintiffs in this adversary proceeding are in the process of entering into a stipulation with Kings Road Investments Ltd. ("**Kings Road**") and other secured lenders for the dismissal of this adversary proceeding as to Kings Road and all other secured lenders.

## PLAINTIFFS' MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

The members of the production line group, which is comprised of the Plaintiffs (collectively, the "**Production Line Group**") in the adversary proceeding currently pending before this Court and captioned as *Jorge Mata, et al. v. Eclipse Aerospace, Inc., et al.* (Adv. Proc. 08-51891-MFW) (the "**WIP Adversary Proceeding**"), respectfully move, pursuant Rule 12(b)(1) of the Federal Rules of Civil Procedure, as made applicable by Rule 12 of the Federal Rules of Bankruptcy Procedure, to dismiss without prejudice the WIP Adversary Proceeding for lack of subject matter jurisdiction (this "**Motion**"), and state:

### Preliminary Statement

1. The sale of substantially all the property of this estate by the chapter 7 trustee was an event of jurisdictional significance for the WIP Adversary Proceeding. The sale provided that certain of the assets—principally identifiable but unfinished aircraft—were sold subject to the claims of the Production Line Group, who are prepetition purchasers of these aircraft. Although the buyer purchased these aircraft subject to the Production Line Group's claims, the sale was structured so as to wholly insulate the Debtor from the outcome of an adjudication of these claims. The sale divested the Debtor of all right, title and interest in the aircraft, and the buyer assumed the potential liability to return the aircraft to the members of the Production Line Group. The sale did not provide for any additional consideration to be due *to* the estate if the Production Line Group's claims to the aircraft fail, or to be owed *by* the estate if the Production Line Group's claims to the aircraft succeed. The Court recently entered an order substituting the asset purchaser as the defendant in this WIP Adversary Proceeding, and as a result, the Debtor and the chapter 7 trustee are no longer defendants in this dispute. Furthermore, the prepetition and postpetition lenders with putative senior secured liens have requested, and the Production

Line Group agrees, that the WIP Adversary Proceeding should be dismissed as to the secured lenders because their liens were completely extinguished by the sale order.

2. As a result, the Court no longer has subject matter jurisdiction over the Production Line Group's state-law claims to the aircraft in the WIP Adversary Proceeding, and the claims concerning provisions of the Bankruptcy Code are no longer relevant. Jurisdiction exists over an adversary proceeding *only if* the proceeding meets the jurisdictional predicate in 28 U.S.C. § 1334(b) ("**Section 1334(b)**") that the proceeding "arises under" the Bankruptcy Code, or "arises in" or is "related to" a case under the Bankruptcy Code. The Production Line Group's state-law claims in the aircraft clearly do not "arise under" or "arise in." As for "related to" jurisdiction, the law in the Third Circuit is clear that "related to" jurisdiction does not exist if the outcome of the proceeding cannot have a conceivable effect on the bankruptcy estate. Here, the dispute between the Production Line Group and the buyer cannot have a conceivable effect on this estate because the aircraft are no longer property of the estate and the sale of the aircraft was structured so that no matter the outcome of WIP Adversary Proceeding—regardless of whether the Production Line Group "wins" or the buyer "wins"—this estate will be unaffected. Thus, there is no "related to" jurisdiction over the WIP Adversary Proceeding, and no Section 1334(b) jurisdiction over the WIP Adversary Proceeding.

3. Because the Court does not presently have jurisdiction under Section 1334(b), it does not have subject matter jurisdiction over the WIP Adversary Proceeding notwithstanding that subject matter jurisdiction initially existed over this proceeding, that the aircraft were formerly property of this estate, or that retention of jurisdiction provisions are contained in the asset purchase agreement or the sale order. Subject matter jurisdiction must exist not only at the commencement of an adversary proceeding but throughout the proceeding, and here the sale of

the aircraft caused the Court's subject matter jurisdiction to lapse. The Court's "exclusive jurisdiction" over property of the estate under 28 U.S.C. § 1334(e) ("**Section 1334(e)**") is inapposite. The aircraft are no longer property of the estate, and by its plain language, Section 1334(e) cannot confer jurisdiction over a proceeding such as the WIP Adversary Proceeding. Finally, the retention of jurisdiction provisions are "fundamentally irrelevant" where, as here, there is no independent statutory basis for subject matter jurisdiction. Accordingly, the Production Line Group respectfully submits that this Court lacks subject matter jurisdiction over the WIP Adversary Proceeding.

4. This seemingly unusual result arises from the unusual terms of the asset purchase agreement and sale order negotiated by the buyer itself in this case, in that the assets—the aircraft—were sold to the buyer subject to the claims of Production Line Group without any escrow, reserve or other consequence to flow to (or from) the estate in light of the outcome of the adjudication of the respect rights of the buyer and the Production Line Group in the aircraft. The Production Line Group believes it is prudent to seek a conclusive adjudication of this jurisdictional issue now out of concern that whichever party loses on the merits of the WIP Adversary Proceeding may appeal on the basis of a lack of jurisdiction. If subject matter jurisdiction is found lacking on appeal, then the expense and time of the parties and the Court consumed during the litigation at the trial level will have been for naught. Moreover, the attendant delay may impair the right of the Production Line Group to obtain an adjudication of its state-law claims to the aircraft in a court of competent jurisdiction.

### Factual Background and Procedural History

5. Before the commencement of these bankruptcy cases, each member of the Production Line Group entered into an Aircraft Purchase Agreement (the "**Purchase**

4

**Agreement**") with the Debtor. Under each Purchase Agreement, the Debtor agreed to sell, and each member of the Production Line Group agreed to purchase, an Eclipse 500 airplane (the "**Airplane**") for a specified price. Each Airplane is manufactured specifically for each member of the Production Line Group, according to the unique specifications, options, and requirements designated by the Production Line Group member. *See Complaint*, ¶ 44.

6. As part of each sale transaction, each Production Line Group member advanced substantial amounts of funds to the Debtor, comprising either a portion, substantially all, or all of the purchase price of the Airplane (the amount advanced generally depends upon the stage of construction of the aircraft). Although not all of the Airplanes have been completed, each aircraft is clearly identifiable and has been designated by the Debtor as the aircraft that is the subject of the applicable Purchase Agreement and to be delivered to the Production Line Group member when completed. *See Complaint*, ¶ 48.

7. On November 25, 2008 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

8. On December 11, 2008, the Production Line Group filed an objection to the cash collateral and DIP financing orders proposed by the Debtor, in order to preserve and protect its ownership interests in the work-in-process (the "**WIP**")[3] [D.E. 131]. On December 23, 2008, the Court entered the *Final Order Authorizing Limited Use Of Cash Collateral And Granting Adequate Protection* [D.E. 228].

9. On December 22, 2008, the Production Line Group filed its *Complaint for Declaratory and Other Relief* [D.E. 209] (as amended, the "**Complaint**"), initiating the WIP

---

[3] The WIP includes all of the assets that are the subject of the Production Line Group's ownership interests as asserted in the Complaint.

Adversary Proceeding. The Production Line Group amended the Complaint on January 15, 2009, and again, with leave from the Court, on July 16, 2009.

10. On the Petition Date, the Debtor filed a motion whereby the Debtor sought approval to sell substantially all the assets of the Debtor, including the WIP, to ETIRC, the stalking horse bidder.[4] After the bid deadline, the Debtor determined that there were no qualified competing bids, and no auction was held.

11. During the sale process, the Production Line Group engaged in very active and lengthy settlement discussions with ETIRC and the Debtors' secured lenders. As the Court is aware, all but one of the members of the Production Line Group entered into a settlement agreement prior to the entry of the sale order on January 17, 2009. The settlement agreement included a withdrawal of the Complaint upon the sale of the Debtor's assets to the Buyer.

12. Unfortunately, ETIRC could not obtain financing for the asset purchase, and on March 5, 2009, the Debtor's Chapter 11 case was converted to Chapter 7 and Jeoffrey L. Burtch was appointed Chapter 7 trustee (the "**Trustee**") for the Debtor's Chapter 7 estate (the "**Estate**"). After filing the amended Complaint on July 16, 2009, the Plaintiffs served the Complaint on both the Trustee and secured lender named as a defendant.

13. On July 31, 2009, the Trustee filed his *Motion of the Chapter 7 Trustee to Approve Sale Procedures, and to Approve Sale, and For Related Relief* [D.E. 763] (the "**Sale Motion**"), seeking approval of a sale to Eclipse Aerospace, Inc. (the "**Buyer**"), subject to better and higher offers. Under the terms of the proposed sale order and Asset Purchase Agreement, the Chapter 7 Trustee, with the consent of the Buyer, requested that the Court enter an Order

---

[4] The prospective buyer in the Chapter 11 case was EclipseJet Aviation International, Inc., an entity formed by ETIRC Aviation, S.a.r.l., the majority shareholder of Debtor Eclipse Aviation Corp.

authorizing the sale of substantially all of the estates' assets free and clear of liens, claims and encumbrances pursuant to section 363(b) and (f) of the Bankruptcy Code. However, with respect to the property that is the subject of the WIP Adversary Proceeding, the Trustee sold and the Buyer purchased the WIP, subject to the claims of the Production Line Group. *See* APA, § 2.2(a).

14. On August 14, 2009, the Production Line Group filed its *Limited Objection and Reservation of Rights of the Production Line Group to Motion of the Chapter 7 Trustee to Approve Sale Procedures, and to Approve Sale, and for Related Relief* [D.E. 802] (the "**Limited Objection**"). In its Limited Objection, the Production Line Group did not object to the Trustee's proposed sale; however, the Production Line Group did seek to clarify that the proposed sale, and the terms of the sale order, APA and any prior order of the Court in the Bankruptcy Cases, would not impair, procedurally or substantively, the prosecution of the claims in the WIP Adversary Proceeding in a court of competent jurisdiction. Limited Objection, ¶ 2.

15. On August 28, 2009, the Court entered its *Order (A) Authorizing the Trustee to Sell Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.E. 850] ( the "**Sale Order**"), authorizing the sale to the Buyer and approving the terms the Asset Purchase Agreement by and between the Buyer and Trustee (the "**APA**").

## Relief Requested

16. The Production Line Group respectfully requests that the Court enter an Order dismissing the WIP Adversary Proceeding without prejudice for lack of subject matter

jurisdiction and allowing the Production Line Group to prosecute its state-law claims in a court of competent jurisdiction.

## Legal Discussion

17. Subject matter jurisdiction may be challenged at any time during a proceeding or on appeal. *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 151-54 (1908). *See also* Fed.R.Civ.P. 12(h)(3). For sake of judicial economy and out of respect for the parties' resources, the Production Line Group seeks an adjudication of this dispositive jurisdictional issue before the WIP Adversary Proceeding proceeds into discovery and any adjudication on the merits.

18. A bankruptcy court's subject matter jurisdiction over an adversary proceeding may change depending upon events in the main bankruptcy case, and the bankruptcy court is "duty bound to ascertain *throughout the course* of a bankruptcy matter" whether subject matter jurisdiction exists over a proceeding. *In re Eltech, Inc.*, 313 B.R. 659, 664 (Bankr. W.D. Pa. 2004) (emphasis in original). *See also In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989) (holding that jurisdiction no longer existed over an adversary proceeding to enforce the automatic stay with respect to property of the estate once the property was transferred to a purchaser). The sale of the WIP under the specific terms of the APA and the Sale Order is an event of jurisdictional significance for the WIP Adversary Proceeding and under the facts and circumstances of this case, deprives the Court of jurisdiction over the WIP Adversary Proceeding.

DEL 86,305,883v1 2-9-10

A.  **The Court lacks subject matter jurisdiction over the WIP Adversary Proceeding under Section 1334(b) because the proceeding raises state-law claims between non-debtors that cannot conceivably affect the Estate.**

19. Pursuant to Section 1334(b), subject matter jurisdiction exists over an adversary proceeding "arising under" under the Bankruptcy Code or "arising in" or "related to" a bankruptcy case. A proceeding is one "arising under title 11" if it invokes a substantive right provided by title 11. *In re Krystal Cadillac-Oldsmobile-GMC Truck, Inc. v. General Motors Corp.*, 232 B.R. 622, 626 (E.D. Pa. 1999) ("For a proceeding to arise under title 11, the relief sought must be based on a provision of title 11."). A proceeding is "arising in" a case under title 11 if, by its nature, it could arise only in the context of a bankruptcy case. *Id.* ("For a proceeding to arise in a case under title 11, it must be one which would not exist but for the bankruptcy case.") And, a proceeding is "related to" a case under title 11 if "the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Although "related to" jurisdiction may include "suits between third parties," such "related to" jurisdiction "is not without limitation" and the ultimate test for jurisdiction remains whether the third-party proceeding "conceivably may have an effect on the bankruptcy estate." *In re WR Grace & Co.*, 2009 WL 5151089, at *4 (3d Cir. Dec. 31, 2009) (*citing In re Combustion Eng'g*, 391 F.3d 190, 226 (3d Cir. 2004). Finally, "[i]n determining the nature and extent of its subject matter jurisdiction, a court must proceed through the complaint on a claim-by-claim basis." *In re Astropower Liquidating Trust*, 335 B.R. 309, 322 (Bankr. D. Del. 2005) (*citing Halper v. Halper*, 164 F.3d 830, 837-39 (3d Cir. 1999)).

9

20. <u>Counts I through VII</u>. No subject matter jurisdiction exists over Counts I through VII of the Complaint (the "**State Law Claims**") under Section 1334(b). The State Law Claims set forth claims pursuant to the common law and various statutes of the State of New Mexico. As substantive rights created under state law, the State Law Claims obviously do not arise under the Bankruptcy Code. Similarly, the State Law Claims do not arise only in the context of the Bankruptcy Case because these claims regularly arise outside the context of bankruptcy in the courts of the State of New Mexico. It is not possible to say that the State Law Claims could "only" arise in the context of a bankruptcy case. Indeed, these State Law Claims would have arisen regardless of whether Eclipse Aviation Corp. filed for bankruptcy. Finally, there is no "related to" jurisdiction, as the State Law Claims cannot conceivably have an effect on the estate.

21. There is no "related to" jurisdiction because the Estate is completely insulated from any effect, positive or negative, on account of the outcome of a final adjudication of the State Law Claims, which seek relief only as to the aircraft and only with respect to the Buyer. Under the APA, the Buyer purchased substantially all the assets of the Estate subject to the "Assumed Liabilities." APA, ¶ 2.2(a) ("Buyer shall assume and become responsible for the Assumed Liabilities.") "Assumed Liabilities" is defined to include:

> [T]he obligation of Seller to return any aircraft or aircraft parts held by the Seller as of the date of the Closing or arising out of any Final Order in the WIP Adversary Proceedings set forth on Schedule 7.8, but not including, to the extent applicable, any claims against Seller, the Companies or the Chapter 7 Estate for (a) specific performance; or (b) any monetary claims against the Seller, including but not limited to, any claims to deposits or segregated funds.

APA, at A-2. No provision of the APA provides for either an additional recovery to the Estate should a final order issue determining that no obligation exists to return any of the aircraft or a claim or other obligation to arise against the estate should an order issue requiring the return of

the aircraft. The agreement negotiated between the Estate and the Buyer as memorialized in the APA is that the Buyer would take the aircraft subject to the claims of the Production Line Group for return of the aircraft without any remedy to the Buyer from the Estate if the aircraft were returned and without any additional consideration to the Estate if the aircraft were not returned. The terms of the Sale Order ratify and implement this agreement. *See, e.g.*, Sale Order, ¶ 22 ("those liabilities assumed by the Buyer are expressly limited to the obligations of the chapter 7 estate to return to the [Production Line Group] any property that is the subject of the [WIP Adversary Proceeding]"). Moreover, the terms of the Sale Order completely insulate the estate from the Assumed Liabilities: "[T]he assumption of any Assumed Liabilities by the Buyer shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Buyer and *shall divest the Debtors of all liability with respect to any Assumed Liabilities.*" Sale Order, ¶ 9 (emphasis supplied). And, like the APA, the Sale Order contains no provision that would either require payment of any consideration from the Estate or otherwise impair any right of the Estate if the aircraft must be returned to the Production Line Group, or provide for payment of any consideration to the Estate or otherwise enhance any right of the Estate if the aircraft are ultimately retained by the Buyer.

22. In sum, the Trustee sold the WIP, divesting the Estate of any right, title and interest in the WIP, such that the WIP is no longer property of the Estate. The Buyer purchased the WIP subject to the State Law Claims without any possibility of any additional benefit to the Estate should the State Law Claims fail, nor any possibility of any loss by the Estate should the State Law Claims succeed. In light of the structure of this sale and the specific facts of this case, it is a legal certainty that the outcome of an adjudication of the State Law Claims cannot conceivably affect the Estate. Therefore, no "related to" jurisdiction exists over the State Law

Claims. *See Pacor*, 743 F.2d at 994 (no "related to" jurisdiction of a proceeding that has no conceivable affect on the estate); *Saul, Ewing, Remick & Saul v. Provident Sav. Bank*, 190 B.R. 771, 776 (D. Del. 1996) ("[A] court has 'related to' jurisdiction over property only when the property is part of the bankruptcy estate."); *In re DVI, Inc.*, 305 B.R. 414, 418 (Bankr. D. Del. 2004) (bankruptcy court does not have jurisdiction to adjudicate a dispute over leases that the debtor transferred to a securitization trust in connection with its reorganization plan).[5]

23. Thus, there is no basis for "arising under," "arising in," or "related to" jurisdiction over the State Law Claims, and therefore no basis under Section 1334(b) for the Court to exercise subject matter jurisdiction over the State Law Claims.

24. <u>Counts VIII through XIII</u>. Counts VIII through X of the Complaint (the "**Section 541 Claims**") sought a declaration predicated on the State Law Claims that the WIP was not property of the Estate. Counts XI through XIII of the Complaint (the "**Section 363 Claims**") sought to prevent a sale of the WIP pursuant to Section 363 of the Bankruptcy Code that would purport to covey to a prospective buyer clear title in the WIP. The Section 363 Claims are moot because the Court has already entered the Sale Order. The Section 541 Claims are likewise moot as the terms of the APA and the Sale Order conveyed to the Buyer all of the right, title, and interest of the Estate in the WIP, subject to the State Law Claims of the Production Line Group. The only factual and legal issues that remain for adjudication are those that pertain to the rights of the Production Line Group in the WIP under the State Law Claims,

---

[5] Count III is a state law claim for specific performance, which, as set forth in the above-quoted language from the APA, is not an "Assumed Liability." The Production Line Group is precluded from pursuing this claim against the Estate because: (1) the Trustee and the Estate are no longer defendants, pursuant to the Court's Substitution Order, and (2) an order for specific performance against the Estate would be moot because the Estate no longer has any assets, let alone a manufacturing facility that could comply with an order for specific performance.

which are claims under the common law and Uniform Commercial Code of New Mexico. Thus, there is no basis for subject matter jurisdiction over the Section 541 Claims or the Section 363 Claims.

25. If the WIP Adversary Proceeding is not dismissed for lack of subject matter jurisdiction, the Production Line Group will, out of necessity, seek to amend the Complaint to delete the Section 541 Claims, Section 363 Claims and the State Law Claim for specific performance. In the interest of judicial economy, the Production Line Group seeks a determination of the dispositive jurisdictional issue raised herein before amending the Complaint, which ultimately may not be necessary.

**B. There is no alternative basis for subject matter jurisdiction.**

26. At present there is no independent basis for jurisdiction under Section 1334(b). The facts that jurisdiction did exist at the commencement of the WIP Adversary Proceeding, that the WIP was formerly property of the Estate, and that the APA and Sale Order purport to retain jurisdiction over the WIP Adversary Proceeding do not establish an alternative basis for subject matter jurisdiction.

> i. The Court's subject matter jurisdiction over the WIP Adversary Proceeding lapsed once the WIP was sold to the Buyer and was no longer property of the estate.

27. A sale of property by the bankruptcy estate divests the bankruptcy court of jurisdiction over the property. *See Hall's Motor Transit*, 889 F.2d at 522. In the *Hall's Motor Transit* case, the Third Circuit affirmed both the district court and bankruptcy court's rulings that no subject matter jurisdiction existed over an adversary proceeding to enforce the automatic stay commenced by a purchaser of real property from the debtor's estate. *Id.* at 523. The purchaser sought to void as an act against property of the estate in violation of the automatic stay the re-

zoning by a municipality of the use of the real property during the pendency of the bankruptcy case and before the sale. *Id.* at 521. The Third Circuit rejected the purchaser's argument that subject matter jurisdiction existed over the adversary proceeding because the proceeding sought to enforce the automatic stay as to property that had been property of the estate at the time of the alleged stay violation. *Id.* at 523. Instead, the Third Circuit held that subject matter jurisdiction did not exist over the adversary proceeding because "[t]he bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate." *Id.* at 522.

28. The Third Circuit's holding in *Hall's Motor Transit* compels a determination that Court's subject matter jurisdiction over the WIP Adversary Proceeding lapsed following the sale of the WIP pursuant to the APA and the Sale Order. By virtue of the APA and the Sale Order, the WIP was transferred from the estate to the Buyer. The consummation of that transfer left the Estate with no interest whatsoever in the WIP, and therefore the subject matter jurisdiction over the WIP and the WIP Adversary Proceeding lapsed. *See id.*

        ii. Section 1334(e) does not confer exclusive subject matter jurisdiction over the WIP Adversary Proceeding.

29. Pursuant to Section 1334(e), the bankruptcy court has exclusive jurisdiction over property of the estate. Here, Section 1334(e) does not confer exclusive subject matter jurisdiction over the WIP Adversary Proceeding for two reasons: (1) the WIP is no longer property of the Estate, and (2) Section 1334(e) only confers jurisdiction over property, not proceedings.

30. First, when the Buyer purchased all of the Estate's right, title, and interest in the WIP, the Estate no longer had any interest whatsoever in the WIP. As explained above, the sale

14

of the WIP caused the Court's jurisdiction over the WIP to lapse. *See Hall's Motor Transit*, 889 F.2d at 522 ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate.").

31. Second, by its plain terms, Section 1334(e) confers jurisdiction over property of the estate but not over proceedings. *Compare* 11 U.S.C. § 1334(b) ("the district court shall have original but not exclusive jurisdiction of all civil *proceedings*") (emphasis supplied) *with* 11 U.S.C. § 1334(e) ("the district court . . . shall have exclusive jurisdiction of all of the *property*, wherever located, of the debtor as of the commencement of such case, and of *property* of the estate") (emphasis supplied).

32. The Fourth Circuit made this distinction between 1334(b) and (e) clear by holding that Section 1334(b) is the only source of subject matter jurisdiction over an adversary proceeding without regard to ownership of the property in dispute. *In re Valley Historic Ltd. P'ship*, 486 F.3d 831, 838 (4th Cir. 2007). As the Fourth Circuit explained, "28 U.S.C. § 1334(b) invests district courts with original but not exclusive jurisdiction over 'civil proceedings.' In contrast, § 1334(e) is a broad grant of exclusive jurisdiction over a debtor's property; it does not invest district courts with jurisdiction to conduct civil proceedings." *Id.* at 837. The jurisdictional grants of Sections 1334(b) and 1334(e) are conceptually distinct. Section 1334(b) grants jurisdiction over civil proceedings. *Id.* Section 1334(e) by contrast establishes the legal fiction that the property of the estate is located within the jurisdictional boundaries of the bankruptcy court. *In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998). Assuming *arguendo* that the Court has some jurisdiction over the WIP pursuant to Section 1334(e) even though the WIP is no longer property of the estate, subject matter jurisdiction would exist over the WIP Adversary Proceeding only if the Trustee or the Buyer could establish that such jurisdiction

15

existed under Section 1334(b). *See Valley Historic Ltd. P'ship*, 486 F.3d at 838 ("the [d]ebtor [must] establish jurisdiction under § 1334(b), since § 1334(e) does not by itself create jurisdiction to conduct civil proceedings.").

33. Thus, Section 1334(e) itself cannot furnish the Court with subject matter jurisdiction over the WIP Adversary Proceeding.

> iii. Neither the APA nor the Sale Order can confer the Court with subject matter jurisdiction over the WIP absent an independent statutory basis for such jurisdiction.

34. Although the Sale Order contains provisions purporting to retain the Court's jurisdiction over the WIP Adversary Proceeding, *e.g.*, Sale Order, ¶ 50(g), these provisions cannot confer the Court with such jurisdiction absent an independent jurisdictional basis under 11 U.S.C. § 1334(b). *See In re Rouge Indus., Inc.*, 326 B.R. 55, 60 (Bankr. D. Del. 2005) (J. Walrath).

35. Neither the parties to a dispute nor a federal court may create subject matter jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauzites de Guinee*, 456 U.S. 694, 701-02 (1982) ("Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."; "[N]o action of the [private] parties can confer subject-matter jurisdiction upon a federal court."). In the bankruptcy context, this rule means that a provision purporting to retain a bankruptcy court's jurisdiction over a dispute contained in an agreement or in a bankruptcy court order approving that agreement does not confer subject matter jurisdiction unless there is an independent statutory basis for subject matter jurisdiction. *Rouge Indus., Inc.*, 326 B.R. at 60 (Bankr. D. Del. 2005). As the Third Circuit has explained:

> Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction cannot be conferred by consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. Bankruptcy courts can only act in proceedings within their jurisdiction. If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant.

*In re Resorts Int'l., Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) (citations and quotations omitted). These principles apply equally, if not with greater, force in the context of an asset purchase agreement and order approving such an agreement under Section 363 in Chapter 7. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995) ("[I]t is relevant to note that we are dealing here with a reorganization under Chapter 11, rather than a liquidation under Chapter 7. The jurisdiction of bankruptcy courts may extend more broadly in the former case than in the latter."). Thus, the Court has subject matter jurisdiction over the WIP Adversary Proceeding only if 11 U.S.C. § 1334 confers such jurisdiction.

36. Moreover, such jurisdiction must exist at all times during the pendency of an adversary proceeding. The bankruptcy court is "duty bound to ascertain *throughout the course of a bankruptcy matter*" whether subject matter jurisdiction exists over a proceeding. *In re Eltech*, 313 B.R. at 664 (emphasis in original). *See also Hall's Motor Transit Co.*, 889 F.2d at 522 (holding that jurisdiction no longer existed over an adversary proceeding to enforce the automatic stay with respect to property of the estate once the property was transferred to a purchaser). Thus, assuming that the Court had subject matter jurisdiction over the WIP Adversary Proceeding as of its commencement, the Court's obligation to determine its

17
DEL 86,305,883v1 2-9-10

jurisdiction throughout the course of the WIP Adversary Proceeding requires that the Court determine whether 11 U.S.C. § 1334 continues to confer subject matter jurisdiction at this time. As discussed above, Section 1334 does not confer subject matter jurisdiction because the WIP is no longer property of the Estate and the outcome of the WIP Adversary Proceeding cannot have a conceivable effect on the Estate. Without such continuing jurisdiction under 11 U.S.C. § 1334, the retention of jurisdiction provisions in the APA and the Sale Order cannot confer subject matter jurisdiction, and are fundamentally irrelevant.

### C. Dismissal should be without prejudice for the Production Line Group to pursue the State Law Claims in a court of competent jurisdiction.

37. Any order dismissing the WIP Adversary Proceeding should provide that dismissal is without prejudice to the Production Line Group adjudicating the State Law Claims in a court of competent jurisdiction. The Sale Order evidences the Court's and the parties' intent that the Production Line Group would be able to have their day in court and receive a determination on the merits of their rights in the WIP:

> Notwithstanding anything in this Order, the Agreement or any other order in these Bankruptcy Cases to the contrary, no aspect of the transactions authorized herein shall impair, substantively or procedurally, the prosecution of the claims in the WIP Adversary Proceedings . . . .

Sale Order, ¶ 22. Unfair prejudice and a deprivation of rights without due process would result if the Production Line Group could neither seek an adjudication of the State Law Claims in this Court for lack of subject matter jurisdiction or in a court of competent jurisdiction after dismissal here for lack of jurisdiction.

18

## Notice

38. A copy of this Motion has been served upon the following via Hand Delivery upon Local Counsel and U.S. Mail on Out of Town Counsel: (a) counsel to the Trustee: Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801, Attn.: Adam Singer, Esq., with a copy to Jeoffrey L. Burtch, Esq., as Trustee ; (b) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, South Carolina 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq. and Sullivan Hazeltine Allinson LLC, 4 East 8th Street, Suite 400, Wilmington, DE 19801, Attn: William David Sullivan; (c) counsel for the Ad Hoc Committee of Senior Secured Noteholders: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn.: Benjamin Hoch, Esq. and Andrew Ment, Esq.; and (d) the Office of the United States Trustee, 844 King Street, Suite 2313, Lock Box 35, Wilmington, DE 19801, Attn: Jane Leamy, Esq.

WHEREFORE, the Production Line Group respectfully requests that the Court enter an Order dismissing the WIP Adversary Proceeding without prejudice for lack of subject matter jurisdiction and allowing the Production Line Group to prosecute the claims in the WIP Adversary Proceeding in a court of competent jurisdiction, and granting the Production Line Group such other and further relief as the Court deems just and proper.

[SIGNATURE ON NEXT PAGE]

Dated: February 9, 2010	GREENBERG TRAURIG, LLP

*Victoria W. Counihan*
_____
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: counihanv@gtlaw.com
melorod@gtlaw.com

-and-

Paul J. Keenan Jr.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: keenanp@gtlaw.com

Counsel to the Production Line Group