**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| AE LIQUIDATION, INC., et al., | ) | |
| | ) | |
| Debtors. | ) | Case No. 08-13031-MFW |
| _____ | ) | |
| | ) | |
| JORGE MATA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. No. 08-51891-MFW |
| | ) | |
| ECLIPSE AEROSPACE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion for Summary Judgment filed by the Defendant, Eclipse Aerospace, Inc. ("Eclipse").  The motion is opposed by the Plaintiffs (the "Production Line Group").  For the reasons set forth below, the Court will deny the Motion.

I.   BACKGROUND

Eclipse Aviation Corporation (the "Debtor") developed and manufactured private jets.  The Debtor agreed to develop and manufacture a private jet for each member of the Production Line Group, pursuant to various purchase agreements (the "Aircraft Purchase Agreements").

---

[1]  This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Under each Aircraft Purchase Agreement, a member of the Production Line Group separately agreed to purchase an Eclipse 500 airplane from the Debtor and paid a portion (typically 60%) of the purchase price.  The Debtor was to build a specific and identifiable airplane according to the specifications and requirements of the particular purchaser.

Prior to the completion and delivery of the airplanes, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 25, 2008.  The Production Line Group filed a complaint on December 22, 2008, seeking a determination that its members possess property interests and rights in some 26 partially completed aircraft and aircraft parts (the "WIP Aircraft"),[2] that those property interests and rights are superior to any interests and rights of the Debtor, that they are entitled to replevin the WIP Aircraft, that they are entitled to specific performance, that they hold equitable liens and constructive trusts on the WIP Aircraft, that the WIP Aircraft are not property of the Debtor's bankruptcy estate, that the WIP Aircraft may not be sold under section 363(b), and/or that the WIP Aircraft may not be sold free and clear of their interests under section 363(f).

---

[2]  The serial numbers for the WIP Aircraft are: 261, 262, 263, 264, 265, 269, 270, 271, 272, 273, 274, 275, 276, 277, 279, 280, 281, 284, 286, 287, 288, 289, 290, 291, 292, and 293.

2

After filing its chapter 11 petition, the Debtor sought to sell substantially all of its assets.  While a sale was approved on January 23, 2009, the buyer was unable to obtain financing for the asset purchase, and the sale never closed.  As a result, on March 5, 2009, the Court granted the motion to convert the case filed by the Ad Hoc Committee of Secured Noteholders.  Jeoffrey L. Burtch was appointed the trustee (the "Trustee").  The Production Line Group amended the Complaint on July 16, 2009, to name the Trustee as a defendant.

The Trustee sought to sell the Debtor's assets as quickly as possible, citing liquidity problems and regulatory concerns.  On July 31, 2009, the Trustee filed a Motion for approval of the sale of substantially all of the estate's assets free and clear of liens, claims and encumbrances under section 363(b) and (f) of the Bankruptcy Code to Eclipse pursuant to an asset purchase agreement (the "APA").  On August 14, 2009, the Production Line Group filed a Limited Objection and Reservation of Rights (the "Limited Objection") to the proposed Sale Motion.  The Production Line Group did not object to the proposed sale of the assets, despite claiming that the WIP Aircraft were not property of the estate.  Rather, they sought to preserve their rights in the WIP Aircraft by adding provisions to the sale order and the APA that would allow them to recover the WIP Aircraft from Eclipse if they succeeded in the WIP Adversary Proceeding.  Eclipse agreed to buy

the WIP Aircraft subject to the rights of the Production Line Group as the Court may determine them.  As a result, on August 28, 2009, the Court entered an Order (the "Sale Order") authorizing the sale to Eclipse.[3]

Subsequent to entry of the Sale Order, Eclipse intervened in the adversary proceeding.  The Production Line Group filed a Motion to Dismiss the Complaint without prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Briefing on the Motion was completed on March 17, 2010.  On August 4, 2010, the Court denied the Motion to Dismiss.

Thereafter, Eclipse filed a Motion for Summary Judgment on August 11, 2010.  A notice of completion of briefing was filed on November 11, 2010.  The matter is ripe for decision.

II.  <u>JURISDICTION</u>

In deciding the Motion to Dismiss, the Court concluded that it had jurisdiction over the subject matter of the WIP Adversary Proceeding because it has exclusive jurisdiction to determine whether or not the WIP Aircraft was property of the estate at the

---

[3] The APA and Sale Order limited Eclipse's liability to return the WIP Aircraft to the Production Line Group, if it is found that the WIP Aircraft are not property of the Debtor's estate.  Eclipse also obtained the rights that the Debtor or Trustee would have to avoid any interests the Production Line Group may have in the WIP Aircraft.

time of the sale.  Mata v. Eclipse Aerospace, Inc. (In re AE
Liquidation, Inc.), 435 B.R. 894, 904-04 (Bankr. D. Del. 2010).
Therefore, the Court has jurisdiction over the WIP Adversary
Proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(1), which is
a core matter pursuant to 28 U.S.C. § 157(b)(2)(K), (N) & (O).

III. DISCUSSION

    A.   Standard for Summary Judgment

Rule 7056 of the Federal Rules of Bankruptcy Procedure
incorporates Rule 56 of the Federal Rules of Civil Procedure in
adversary proceedings.

In considering a motion for summary judgment under Rule 56,
the court must view the inferences from the record in the light
most favorable to the non-moving party.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Wagner Mining
Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).  If there does not
appear to be a genuine issue as to any material fact and on such
facts the movant is entitled to judgment as a matter of law, then
the court shall enter judgment in the movant's favor.  See, e.g.,
Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v.
Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine
issue of material fact exists.  See Matsushita Elec. Indus. Co.
v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986); Integrated

<u>Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Group, Inc.)</u>, 377 B.R. 471, 475 (Bankr. D. Del. 2007). A fact is material when it could "affect the outcome of the suit." <u>Anderson</u>, 477 U.S. at 248.

Once the moving party has established a prima facie case in its favor, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing that there is a genuine issue of fact for trial. <u>See, e.g.</u>, <u>Anderson</u>, 477 U.S. at 252; <u>Matsushita</u>, 475 U.S. at 585-86; <u>Michaels v. New Jersey</u>, 222 F.3d 118, 121 (3d Cir. 2000); <u>Robeson Indus. Corp. v. Hartford Accident & Indem. Co.</u>, 178 F.3d 160, 164 (3d Cir. 1999).

B.   <u>FAA Registration Statute</u>

Eclipse contends that it is entitled to judgment in its favor on Counts 1 through 6 of the Amended Complaint because those counts are premised on the Uniform Commercial Code which is not applicable to aircraft. Instead, Eclipse contends that interests in, and title to, aircraft are governed by federal law. <u>Philko Aviation, Inc. v. Shacket</u>, 462 U.S. 406, 410 (1983) (holding that FAA registration requirements preempt state law, including the UCC). <u>See also</u> 49 U.S.C. § 40100 <u>et seq</u>. (the "FAA Registration Statute").

Because the Production Line Group did not record any interest in the WIP Aircraft in accordance with the FAA Registration Statute, Eclipse contends that its interest in the

6

WIP Aircraft (as a hypothetical lien creditor under section 544 which it acquired from the trustee) has superiority over the interests of the Production Line Group.  See, e.g., South Shore Bank v. Tony Mat, Inc., 712 F.2d 896, 899 (3d Cir. 1983) (holding against innocent purchaser who had not recorded title to aircraft with the FAA until two years after bank recorded its security interest with the FAA).

The Production Line Group disagrees.  They argue that the FAA Registration Statute is not applicable because the WIP Aircraft are not "civil aircraft of the United States" which is defined by that statute to mean only aircraft for which the FAA has issued a valid Certificate of Aircraft Registration.  49 U.S.C. § 40102(a)(17).  Because the majority of the WIP Aircraft were still in production (i.e., incomplete), the Production Line Group notes that none of the WIP Aircraft had been registered with the FAA by the time the Debtor filed its bankruptcy case.[4]

---

[4]  Eclipse presented an affidavit stating that none of the aircraft were registered.  (Haley Decl. at ¶ 3-4.)  The Production Line Group presented an affidavit showing that three of the WIP Aircraft were registered on September 15, 2009, ten months after the Debtor filed its bankruptcy petition.  (Keenan Decl. at ¶¶ 5-7.)  The Production Line Group contends that registration after the bankruptcy filing cannot be used to avoid their interests because the trustee's (and, therefore, Eclipse's) avoidance powers are only those that a hypothetical lien creditor would have under state law as of the petition date.  See, e.g., Lewis v. Diethorn, 893 F.2d 648, 650-51 (3d Cir. 1990) (holding that trustee "possesses only those powers of avoidance which a hypothetical judgment lien creditor would have under state law on the date the bankruptcy petition was filed.").

Consequently, the Production Line Group argues that their state law rights have not been preempted by the FAA Registration Statute.  <u>See</u> 14 C.F.R. § 49.1 (the recordation regulations apply "to the recording of certain conveyances affecting title to, or any interest in any aircraft registered" under that Act).

Eclipse replies that the Production Line Group's narrow reading of the FAA Registration Statute (that the WIP Aircraft had to be registered for the FAA Registration Statute to apply) was expressly rejected by the Supreme Court in the <u>Philko</u> case. In that case a buyer of an aircraft sought to establish title where the seller had promised to register the aircraft but in fact no bill of sale was ever created or registered.  The Supreme Court rejected the argument that the FAA Registration Statute was not applicable because no "instrument" of title was ever provided, noting:

> We are convinced, however, that Congress did not intend [the FAA Registration Statute] to be interpreted in this manner.  Rather, [the FAA Registration Statute] means that every aircraft transfer must be evidenced by an instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected.  Furthermore, because of these federal requirements, state laws permitting undocumented or unrecorded transfers are preempted, for there is a direct conflict between [the FAA Registration Statute] and such state laws, and the federal law must prevail.

462 U.S. at 409-10.  The Third Circuit elaborated:

_____

The Court agrees with the Production Line Group that it must evaluate the rights of the parties as of the Petition Date.  <u>Id.</u>

8

> The purpose of [the FAA Registration Statute] is to
> create "a central clearing house for recordation of
> titles so that a person, wherever he may be, will know
> where he can find ready access to the claims against,
> or liens, or other legal interests in an aircraft." . .
> . In keeping with that congressional purpose, the
> Supreme Court in Philko Aviation interpreted [the FAA
> Registration Statute] to mean that every aircraft
> transfer must be evidenced by an instrument and that
> every such instrument must be recorded with the FAA in
> order to have any affect [sic] as against the rights of
> innocent third parties. Id.  The Court concluded that
> all state laws which permit undocumented or unrecorded
> transfers to affect the interests of third parties are
> preempted by the federal act.

South Shore Bank, 712 F.2d at 897-98.

Eclipse asserts, therefore, that the argument of the Production Line Group that they are excused from the requirements of the FAA Registration Statute simply because the WIP Aircraft are not registered has been expressly rejected by the Philko Court.

The Production Line Group responds that the FAA Registration Statute and the Philko case are not applicable to this case because none of the WIP Aircraft were completed.  The Production Line Group contends that the fear expressed by Eclipse (that parties can avoid the requirements of the FAA Registration Statute simply by not registering their aircraft) is unfounded because in order to operate an aircraft it must be registered. The Production Line Group argues that the policy concerns behind the FAA Registration Statute (that the mobility of aircraft creates the need for a national registration system) are simply

not implicated here because uncompleted aircraft cannot be flown anywhere.  Id. at 897-98.

The Court agrees with the Production Line Group that the Philko case is distinguishable and that the FAA Registration Statute does not apply to the WIP Aircraft.  That statute applies only to aircraft that are completed and have been or could be registered with the FAA (i.e., are at least operable as aircraft).[5]  49 U.S.C. § 40102(a)(17).  "Aircraft" is defined in the FAA Registration Statute to include "any contrivance invented, used, or designed to navigate or fly in, the air."  49 U.S.C. § 40101(6).  Aircraft parts and partially completed aircraft do not fit that definition.

The Court agrees with the reasoning of the Court in the Tower Air case which held that the FAA Registration Statute was not applicable to aircraft engines.  Stanziale v. Pratt & Whitney (In re Tower Air, Inc.), 319 B.R. 88, 99 (Bankr. D. Del. 2004).  The Tower Air Court distinguished both Philko and South Shore Bank because those cases "involved the conveyance of aircraft in their entirety, and neither involved or made any reference whatsoever to engines or components separate and apart from the aircraft."  Id. at 95.

---

[5]  In this case, there is no evidence that any of the WIP Aircraft were capable of flying as of the Petition Date.

The Court concludes that there is a difference between completed aircraft (which must be registered to be operated) and a partially completed aircraft or aircraft parts, such as engines.  In this case, there is not evidence that any of the WIP Aircraft were operable.  In fact, it appears that many were no more than parts, which could not be registered under the FAA Registration Statute.  Therefore, the Court concludes that the Production Line Group's alleged interests in the WIP Aircraft arising under New Mexico law are not preempted by the FAA statute.  The Court therefore finds that Eclipse is not entitled to summary judgment on Counts 1 through 6 of the Amended Complaint.

C.   Constructive Trust

Eclipse also contends that the Production Line Group's claims for a constructive trust in the WIP Aircraft must fail because the Production Line Group has not alleged any wrongful conduct in the Second Amended Complaint.  Eclipse notes that this Court has already held that deposits paid by similar aircraft purchasers in this case were not held in constructive trust because there was no showing of wrongful conduct by the Debtor.  See, e.g., Over and Out, Inc. v. Eclipse Aviation Corp. (In re AE Liquidation, Inc.), 426 B.R. 511 (Bankr. D. Del. 2010).

The Production Line Group contends that Eclipse has misstated the holding of the Over and Out decision, which in fact

11

held that no showing of wrongful conduct was necessary under New Mexico law.  Id. at 515-16.  They argue that a constructive trust is available under New Mexico law for a breach of a legal or equitable duty, without a showing of wrongful conduct.  Id. (holding that the "type of wrongful conduct which warrants imposition of a constructive trust is any 'breach of any legal or equitable duty' or the 'commission of a wrong.'") (quoting Tartaglia v. Hodges, 10 P.3d 176, 189 (N.M. App. 2000)).

The Court agrees with the Production Line Group that their constructive trust claims are not dependent on wrongful conduct in the nature of fraud and can be simply a breach of a legal or equitable duty.  Therefore, the Court cannot grant summary judgment in favor of Eclipse on this count because the Production Line Group has alleged a breach of duty and there are genuine issues of material fact in dispute on that point.

D.    State Law Claims

In its reply, Eclipse argues that the Production Line Group cannot establish any interest in the WIP Aircraft under the applicable provisions of the UCC.  It argues that, where a seller is insolvent, the buyer has only an unsecured claim.  See, e.g., Diesel Performance, Inc. v. G. Paloetti Co., Inc. (In re G. Paloetti, Inc.), 205 B.R. 252, 262-63 (Bankr. N.D. Cal. 1997) (holding that in the absence of perfection of any security

interest "section 2502 gives a buyer nothing more than an unsecured claim in a bankruptcy case").

The Production Line Group responds that this argument was not made in Eclipse's motion for summary judgment and therefore should not be considered.  See, e.g., Washburn v. Harvey, 504 F.3d 505, 510 (5th Cir. 2007) (holding that summary judgment may not be granted on unrequested grounds).

In addition, the Production Line Group argues that there are genuine issues of material fact in dispute precluding summary judgment.  Specifically, they note that the issue of whether, and on what date, the Debtor became insolvent is in dispute.  This is relevant they contend because the seller's insolvency cuts off the buyer's rights only if it becomes insolvent within ten days after receipt of the first installment.  N.M. Stat. § 55-2-502(b); Paoletti, 205 B.R. at 262.  Further, the Production Line Group argues that, contrary to Eclipse's contention, section 2-502(b) does not cut off rights they have under section 2-716, but is in addition to those rights.  Cf. Paloetti, 205 B.R. at 260 (concluding that only section 2-502 applies when a seller becomes insolvent, but noting that other courts disagree).

The Court agrees with the Production Line Group that summary judgment on their state law claims cannot be granted because it was not requested in the initial brief on Eclipse's motion for

summary judgment and because there are genuine issues of material fact in dispute on those claims.

IV.    CONCLUSION

For the reasons set forth above, the Court will deny Eclipse's Motion for Summary Judgment.

An appropriate Order is attached.

BY THE COURT:

Dated: February 28, 2011

Mary F. Walrath
United States Bankruptcy Judge

14